[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These two consolidated cases are appeals from an order of CT Page 9621 the defendant Freedom of Information Commission ("FOIC" or "Commission") to disclose a police incident report (the "Report") concerning an alleged incident at the Middlebury home of Deborah Rowland, ex-wife of Governor John G. Rowland.* The plaintiffs, Middlebury Police Chief Patrick J. Bona and Governor Rowland, seek reversal of the FOIC decision, alleging numerous procedural irregularities in the proceedings before the Commission, as well as contending that the Report is exempt from disclosure under General Statutes § 1-19(b)(3)(G). The defendants in these appeals, in addition to the FOIC, are the Hartford Courant and one of its reporters, Craig Baggott (together sometimes referred to as the "Courant".) Baggott initiated the events which led to these appeals by requesting copies of the Report from Bona.
The Commission found the following facts, virtually all of which are undisputed. On or about September 1, 1994, Baggott, a political reporter for the Courant, made a written request to the Middlebury Police Department for disclosure of all police incident reports and related materials for the dates of April 14, 15, and 16, 1994. Baggott had previously made oral requests to Bona for the same reports and had been denied. The written request did not mention Rowland or his ex-wife, but referred to the incident by date only. Bona orally denied the written request as he had the prior verbal requests. On September 29, 1994, David Fink, another reporter acting on behalf of the Courant, appealed the denial to the FOIC. The FOIC docketed that appeal as #FIC 94-252 and on October 6, 1994, sent notice that the hearing for that appeal would be held on October 13, 1994.
In the interim, Baggott hand-delivered to the Middlebury Police Department another written request for incident reports, domestic violence reports and related materials, but this time designated the report dates of April 9, 10 and 11, 1994. This request also did not mention either of the Rowlands. On October 11, 1994, the following day, Baggott hand-delivered to Bona a third written request, this time for all reports of "an incident at the Rowland home on South Street in Middlebury during April." The request sought the disclosure of the records "today" and asked for a response "as soon as possible." Upon receiving this request, Bona told Baggott that he would refer it to the town attorney. When Baggott pressed him for an answer, Bona stated that he would not provide the information that day. CT Page 9622
On the following day, October 12, counsel for the Courant faxed a letter to Mitchell W. Pearlman, an attorney who is the Executive Director and General Counsel to the Commission. The letter informed Pearlman that Baggott had made an additional written request to Bona, which Bona had denied on October 11. Counsel for the Courant requested in the letter that the denial of Baggott's October 10 request be heard simultaneously with Docket FIC #94-252, the denial of the September 1 request, which was scheduled to be heard the following day, October 13. A copy of the letter was faxed to Bona and Middlebury Town Counsel.
Baggott received a written response with respect to his October 10 and 11 requests in a letter from Bona dated October 13 and received by Baggott on October 14. With respect to "reports of an incident at the Rowland home," Bona provided Baggott with a copy of the "incident history" and stated that he would not disclose the full incident report because it contained uncorroborated allegations subject to destruction pursuant to General Statutes § 1-20c. The incident history revealed that Deborah Rowland made a complaint to the Middlebury Police on April 10, 1994 concerning an incident identified in the incident history as "Family Offenses, Nonviolent" and "verbal between husband and wife".
At the FOIC hearing on October 13, 1994, the Freedom of Information Commissioner to whom the matter was assigned, Deane C. Avery, denied the Courant's request to hold a simultaneous hearing that day on the September 1 and the October 10 and 11 requests for the Report. The hearing proceeded in Docket #FIC 94-252 only, the denial of the September 1 request. Counsel for Rowland and Bona conceded at that hearing that there was no incident report involving Rowland for the specified dates of April 14, 15 or 16. The outcome of that FOIC case is not at issue in this appeal.
Also on October 13, Avery assigned an October 17, 1994 hearing date on the Courant's October 10 and 11 requests for the Report, docketed as #FIC 94-255. The parties were advised of this assignment during the October 13 hearing on #FIC 94-252 and also in writing thereafter. At the hearing held on October 17, John Rowland was granted party status at his request. Both Bona and Rowland filed or made several motions at the outset of the hearing, raising several alleged procedural irregularities. All of the motions were denied by Avery and the hearing then CT Page 9623 proceeded on the merits. Evidence was concluded on October 17 and the parties were given the opportunity to submit briefs by the end of the day on October 20.
Avery completed his proposed findings and decision on October 24. Copies were distributed to all members of the Commission on October 28, along with a notice that the FOIC would consider the matter at a special meeting scheduled for October 31, 1994. At that meeting, the entire Commission adopted the proposed findings and decision verbatim as the final decision of the Commission. The final decision ordered disclosure of the Report within twenty-four hours of the decision and permitted Bona to retract certain portions of the report because they referred "to third parties who are not the subjects of the incident in question." These two appeals were filed thereafter.
These appeals are brought pursuant to General Statutes §§1-21i(d) and 4-183, both of which provide a right of appeal to the Superior Court by parties who are aggrieved by the final decision of a state agency or commission. At trial, the parties filed written stipulations that the plaintiffs Bona and Rowland initiated these appeals, that Bona is the keeper of the records of the Middlebury Police Department and is responsible for the Report, that Rowland is a subject mentioned in the Report and was admitted as a party in the proceedings before the FOIC, and that none of the parties contests the aggrievement of the plaintiffs. Based on the stipulations, the court finds that Bona and Rowland are both aggrieved by the FOIC decision from which they appeal.
General Statutes § 1-21(d) provides that any appeal from a decision of the FOIC is to be taken in accordance with General Statutes § 4-183, the appeal provision of the Uniform Administrative Procedure Act ("UAPA"). Subsection (j) of § 4-183 sets forth the scope of judicial review for appeals under the UAPA:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) CT Page 9624 clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The issues raised in these appeals are principally issues of law, not issues of fact. Where the FOIC's conclusion requires an interpretation of a statute, its decision is a determination of law. Connecticut Humane Society v. Freedom of InformationCommission, 218 Conn. 757, 762 (1991). Interpretation of statutes presents a question of law. Id., 761. The standard of judicial review for questions of law is less stringent than that for questions of fact.
 Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts . . . it is for the courts, and not for administrative agencies, to expound and apply governing principles of law.
(Citations omitted; internal quotation marks omitted.) Wilsonv. Freedom of Information Commission, 181 Conn. 324, 342-43
(1980).
 I
The plaintiffs' first of several procedural contentions is that the FOIC violated General Statutes § 1-21i(b) and its own regulation, Regs., Conn. State Agencies § 1-21j-42, by accepting and acting on FOIC Docket #94-255 in the absence of a proper complaint. Bona makes the additional claim that the FOIC lacked jurisdiction because of the absence of a proper complaint. General Statutes § 1-21i(b) of the statutes requires the filing with the FOIC of a notice of appeal in order to appeal to the FOIC the denial of access to public records. The Commission's regulation sets forth detailed requirements for the form of a complaint filed with the Commission:
 All complaints shall be in writing and shall include the following components:
 (a) The exact legal name of each person seeking the relief and the address or principal place of business of each such person. If the complainant is a corporation, trust association or organized group, CT Page 9625 it shall also give the state under the laws of which it was created or organized.
 (b) A concise and explicit statement of the facts on which the commission is expected to rely in granting the relief sought, including but not limited to the items that follow:
 (1) The date of the alleged violation of any provision of sections 1-15, 1-18a, 1-19 to 1-19c, inclusive, and 1-20a to 1-21k, inclusive, of the General Statutes.
 (2) The identity of the public agency and any public agency official alleged to have denied the complainant a right provided by sections 1-15, 1-18a, 1-19 to 1-19c inclusive, and 1-20a to 1-21k, inclusive, of the General Statutes.
 (3) The substance of the information sought by the complainant from the public records or the subject matter of the meeting of the public agency, if known.
 (4) A copy of any written application for a copy of a record filed under section 1-19 of the General Statutes.
 (5) An explanation of any unusual circumstances involved in the complaint to which the commission will be expected to direct its particular attention, including the existence of emergency conditions or any request for the granting of interlocutory relief by way of an interim order.
Regs., Conn. State Agencies § 1-21j-42. The writing which served as the complaint before the FOIC was the October 12, 1994 letter to Pearlman, the FOIC's Executive Director and General Counsel, from Attorney Ralph Elliot. The body of the letter reads as follows:
 I have received notice of the hearing in the above-entitled matter [Docket #FIC 94-252] scheduled before your Commission on October 13 at 9:30 a.m., and will be there representing Complainants. On October CT Page 9626 10, Complainant Craig Baggott presented to Respondent Chief Bona the attached letter which, like the letter involved in the above-entitled docket, requested access to data concerning the incident involving Mrs. Rowland; and yesterday Chief Bona denied access to the data sought in the attached letter of October 10. Accordingly, it is our intention and request of the Commission that proceedings with respect to this related matter be heard simultaneously at the hearing tomorrow on the above-entitled docket. I certify that I have by fax faxed a copy of this letter and the attached October 10 letter to all those to whom the Notice of Hearing in the above-entitled matter was sent by Deborah L. Rembowski today.
The issue of the adequacy of the October 12 letter as a complaint under FOIC regulations was raised at the October 17 hearing before Avery. Rowland filed a motion for continuance which alleged, inter alia, that there was "no proper complaint." Avery denied the motion and in his proposed finding stated, without explanation, "it is found that a proper complaint was filed with the Commission within the meaning of § 1-21j-42 of the Regulations of Connecticut State Agencies, prior to October 17, 1994. The entire Commission incorporated the same finding in the final decision.
Clearly, the October 12 letter does not comply with several of the applicable statutory and regulatory requirements for a complaint with the FOIC and it was not a "proper complaint" within the meaning of the applicable statute and regulation. The letter does not state that it is a notice of appeal; it does not use the word "appeal". It does not state the legal name or address of the persons seeking relief. There is no statement of facts nor a statement of the substance of the information sought by the complainant.
In its brief filed with the court, the Courant contends that the plaintiffs waived any claim with respect to the adequacy of the October 12 letter as a complaint to the FOIC because they failed to raise the issue before the FOIC. This contention is clearly erroneous. Rowland's motion for continuance, which is included within the record of this administrative appeal, clearly raised this issue. The motion was presented to Avery at the outset of the October 17 hearing and was promptly denied by Avery. The plaintiffs did not waive the statutory and CT Page 9627 regulatory requirements for a FOIC complaint.
The Commission, in its brief, does not specifically address the adequacy of the October 12 letter as an FOIC complaint. Rather, the Commission addresses together all of the alleged procedural deficiencies before the FOIC and argues that there was no due process violation because the plaintiffs received a fair hearing before a fair tribunal.
The court finds that the October 12 letter fails to comply with the applicable statutory and regulatory requirements for a complaint to be brought to the FOIC. The more difficult issue, however, is whether the noncompliance is sufficient grounds to reverse the FOIC's final decision on the merits. None of the parties has cited any cases or other authorities addressing this issue. In the absence of any authority on point, the court turns to the UAPA standard of judicial review. General Statutes § 4-183(j) provides
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced . . . If the court finds such prejudice, it shall sustain the appeal . . .
The statute requires prejudice for reversal. Neither of the plaintiffs has alleged, identified or argued any specific prejudice which resulted from the deficiencies in the Complaint. Rowland claims in his brief that he was denied due process as a result of all of the alleged procedural irregularities. However, he fails to specify any resulting prejudice. However, he fails to specify any resultling [resulting] prejudice. No prejudice is apparent to the court from a review of the record, including the transcript of the October 17, 1994 hearing. Neither of the plaintiffs appeared surprised by any of the claims or evidence presented by counsel for the Courant at the hearing. Most of the hearing was consumed by the contentious arguments of the attorneys for all the parties; the time spent on actual testimony was small in comparison. In the absence of any prejudice, these appeals cannot be sustained because of the failure of the complaint to comply fully with General Statutes § 1-21i(b) and Regs., Conn. State Agencies § 1-21j-42.
II CT Page 9628
The plaintiffs' second claim is that the FOIC improperly expedited the hearing of Docket #94-255 in violation of three provisions of applicable statutes and regulations. They first claim that in issuing a notice of hearing on October 13 for a hearing to be held October 17, the FOIC violated General Statutes § 1-21i(a), which provides that any denial of access to public records must be made in writing within four business days of the request for the records and that failure to respond within those four days would be deemed denial. The plaintiffs contend that under the statute, Bona had until October 15, 1994 to respond to Baggott's October 10 and 11 requests for the Report and the Commission's order of October 13 setting the hearing for October 17 denied Bona his statutory right to respond within four business days.
In its final decision, the FOIC found, in paragraph thirteen, that Bona orally denied Baggott access to the Report on October 11, 1994. Based on that verbal denial, Avery assigned a hearing date of October 17. This procedure was not in violation of the FOIC statutes. General Statutes §1-21i(b)(1) provides that any person "denied the right to inspect or copy records" may appeal to the FOIC. A written denial is not required under the statute, merely a denial.
The plaintiffs also challenge the factual finding of the Commission that Bona verbally denied the request for the Report on October 11. This finding presumably was based on Baggott's testimony before Avery that Bona "said he would not provide me with information that day."
At the trial before the court, the plaintiffs presented the testimony of a police officer who was present for almost all of the meeting between Bona and Baggott on October 11. She testified that she did not hear Bona refuse to provide anything to Baggott. However, she also admitted being out of the room for approximately one minute of the conversation in order to make photocopies and acknowledged that she could not hear the conversation during that time. Neither Bona nor Baggott testified at the trial before the court.
The UAPA establishes a high standard of judicial review for factual findings by an agency or commission. "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." General Statutes § 4-183(j). The evidence presented by the plaintiffs at trial CT Page 9629 was insufficient to overcome the Commission's factual finding that Bona verbally denied Baggott's request for the Report on October 11, 1994.
The plaintiffs' second claim with respect to the expedited hearing before Avery is that the FOIC failed to follow its own regulation with respect to expedited hearings. Regs., Conn. State Agencies § 1-21j-43(b) provides
 The commission shall schedule each contested case for hearing in the order in which it is received. The commission shall accord priority in the assignment for hearing of any contested case for which there is a timely written request setting forth a bona fide emergency which necessitates a hearing by a date certain within thirty days after receipt of the complaint.
It is undisputed that in scheduling the hearing for Docket #94-255 on October 17, 1994, the Commission expedited the matter over at least one hundred other FOIC matters awaiting a hearing. In its final decision, the Commission found that the October 12 letter constituted a written request for an expedited hearing within the meaning of the regulation, § 1-21j-43, and that there was a bona fide emergency necessitating an earlier hearing in that Rowland was a candidate in the gubernatorial election and the information sought would lose its value to readers of the Hartford Courant if disclosure were ordered after November 8, the election date. The Commission further found in its final decision that the hearing officer did not violate the regulation in question and even if he did, good cause existed for him to deviate from the regulation under the authority provided in Regs., Conn. State Agencies § 1-21j-13.
This claim with respect to the timing of the hearing is unavailing because there was substantial compliance with the regulation. Attorney Elliot's letter of October 12 seeking a consolidation of Docket #94-255 with #94-252 constituted a timely written request for priority in hearing. The letter did not set forth a "bona fide emergency" or a stated reason for expediting the hearing. However, the request for consolidation was taken up by Avery at the October 13 hearing on the first docket, #92-252. At the outset of the hearing, Avery deferred a decision on the consolidation in order to take evidence in docket #94-252. When challenge was made to expediting #94-252, CT Page 9630 Avery explained, "The reasons for the expedited hearing was because the information is sought in a timely fashion because of the upcoming election." Counsel for both Bona and Rowland were present throughout the hearing on Docket #94-252. At the conclusion of that hearing, Avery returned to the issue of the scheduling of Docket #94-255. He ruled that "in fairness" to Bona and Rowland, he would schedule that docket for hearing on Monday October 17. Although he did not state the reason for his decision, he responded to an inquiry from counsel for Rowland at the outset of the October 17 hearing. Avery stated that it was not unprecedented to expedite some hearings over others and that
 I think it is apparent to everyone that there is some time value to this request. If this request of the Courant didn't invoke Rowland, I don't think the request would ever have been made. It obviously, the Courant obviously feels it has some connection with the upcoming election.
There is no definition of "bona fide emergency" in the FOIC regulations, § 1-21j-43(b), relating to expedited hearings. Nor is there a definition of "good cause" in the FOIC regulations, § 1-21j-13, relating to deviation from the FOIC's rules. There is, however, an adequate basis in the record for the Commission's findings of bona fide emergency and/or good cause to expedite the hearing in #94-255 because of Rowland's status as a gubernatorial candidate, the public interest in the Report and the imminent election date of November 8.
Rowland's third claim with respect to the expedited hearing for Docket #94-255 is that the decision to expedite the hearing in that docket was made by Pearlman, rather than the Commission, in violation of Regs., Conn. State Agencies § 1-21j-43(b). Section 1-21j-43(b) provides that the Commission is to schedule hearings and decide the priority of hearings. Rowland cites the testimony of Pearlman on page 89 of the October 17 hearing on Docket #94-255 as evidence that Pearlman decided the issue of the expedited hearing for Docket #94-255.
Pearlman is quoted on that page as saying, "This case was granted expedited hearing and it was my decision to do so." However, at the very top of the next page Pearlman continued,
 A Let me go back and make reference again to the first complaint. That was my decision. This was CT Page 9631 taken up at the — this was not granted an expedited hearing. They just said we will take the matter up to find out what the story was during the hearing on the original complaint. What was that docket number?
COMMISSIONER AVERY: 252.
A 252.
BY MR. ROBERTSON:
 Q It was on 252, you are the one that made the decision to grant the expedited hearing?
A That's correct.
As these additional questions and answers make clear, Pearlman decided to expedite the hearing in the first docket, #94-252, which is not on appeal here. If Pearlman acted in excess of his authority in that FOIC case, it would not affect the merits of this appeal. The decision to expedite the hearing in #94-255, the subject of this appeal, was made by Avery, a FOIC Commissioner, on October 13, at the end of the hearing on #94-252. Rowland contends that #94-252 and #94-255 were "conjoined," but this is not accurate. Avery took administrative notice of #252 in #255, but he did not consolidate both dockets. Even if there were merit to any of these claims concerning the expediting of the hearing before the FOIC, the plaintiffs have again failed to allege or argue any specific prejudice which resulted to them. Accordingly, the appeals cannot be sustained on those grounds.
 III
Rowland also claims that he was not made a "`party' to the proceeding," in violation of Regs., Conn. State Agencies § 1-21i-27, which gives the FOIC the authority to designate as a party anyone whose legal rights are being determined in the case. It appears that Rowland is once again referring to Docket #94-252. Rowland's request to be made a party in that docket was denied. The merits of Docket #94-252 are not before the court on this appeal, however. Insofar as the claim is that Rowland was not made a party to #94-255 by the Commission under § 1-21i-27, the record clearly shows that he was admitted as a party on his own motion at the very beginning of the hearing on Docket #94-255 on October 17 and participated fully at that hearing and all CT Page 9632 subsequent proceedings relating to that docket, with the result that there has been no prejudice to him.
 IV
As additional grounds for reversal of the FOIC's final decision, the plaintiffs allege that there were two ex parte conversations in violation of General Statutes § 4-181 between representatives of the FOIC and reporters for the Hartford Courant with respect to the requests for access to the Report. The record reveals the following facts. On or about October 6 or 7, David Fink spoke by telephone with Mitchell Pearlman, the FOIC's Executive Director and General Counsel. Fink was the person who filed the first appeal to the FOIC, the one which became Docket #94-252. That appeal was on file with the FOIC when Fink and Pearlman conversed by phone for approximately ten minutes. During the conversation, Fink made Pearlman aware that the police report which he was seeking allegedly involved John Rowland, then a gubernatorial candidate, and his ex-wife. (Neither the first letter request to Bona nor the first appeal filed with the FOIC indicated that the records sought involved the Rowlands.) Fink had requested an expedited hearing in his appeal and he told Pearlman in their discussion that he wanted an expedited hearing so that the Report could be disclosed prior to the election. Based on the information acquired in this phone conversation, Pearlman decided that the hearing in Docket #94-252 should be expedited. The hearing was scheduled on an expedited basis for October 13, 1994.
The conversation between Fink and Pearlman did not relate to Docket #94-255, the FOIC case which gives rise to the two appeals before this court. Fink and Pearlman discussed only Docket #94-252. As of the date of the conversation, Baggott had not yet made the written requests for the Report which would later give rise to Docket #94-255 and to these appeals. Because the Fink/Pearlman conversation did not relate to the October 10 or 11 request for the Report, nor to FOIC Docket #94-255, it cannot serve as the basis for reversal of the final decision in #94-255. The plaintiffs contend that the expediting of Docket #94-252 led to the expediting of Docket #94-255 and the Fink/Pearlman ex parte conversation therefore tainted Docket #94-255 as well. The court finds no merit to this claim.
The hearing for Docket #94-255 was expedited by order of Avery on October 13 after he had heard the evidence in Docket CT Page 9633 #94-252. There is nothing in the record which suggests that Avery's decision was influenced in any way by Pearlman's decision to expedite the hearing in Docket #94-252. The only apparent connection between Pearlman's decision and Avery's is that Avery made his decision at the conclusion of the expedited hearing in Docket #94-252, which occurred on October 13 as ordered by Pearlman. That link is simply too tenuous to support the claim that the allegedly ex parte conversation between Fink and Pearlman concerning the scheduling of Docket #94-252 should serve as grounds for reversal of Docket #94-255.
The second alleged ex parte conversation did concern Docket #92-255. On Tuesday, October 18, 1994, the day following the hearing before Avery of the appeal in Docket #94-255, Christopher Keating, a reporter for the Hartford Courant, spoke with Avery by phone. They discussed the hearing before Avery and a motion to reopen the hearing which had been filed by Rowland. Keating asked Avery to comment on statements which had been made by counsel for Bona and Rowland and Avery did so. Keating called Avery because he was writing an article about the FOIC proceedings for the Courant. The article was published in the Courant the next day, October 19, 1994. No notice was given to Bona or Rowland of Keating's intent to have such a discussion with Avery.
The conversation between Avery and Keating on October 18, 1994 was a prohibited ex parte conversation in violation of General Statutes § 4-181(a), which provides
 Unless required for the disposition of ex parte matters authorized by law, no hearing officer or member of an agency who, in a contested case, is to render a final decision or to make a proposed final decision shall communicate, directly or indirectly, in connection with any issue of fact, with any person or party, or, in connection with any issue of law, with any party or the party's representative, without notice and opportunity for all parties to participate.
Avery was a member of the FOIC who was also the hearing officer in Docket #94-255, which was a contested case. As of October 18, the evidence in the docket had been completed and briefs from the parties were due two days later, October 20. As hearing officer, Avery was to render a proposed final decision and he did so six days after his phone conversation with CT Page 9634 Keating. Keating was a representative of the Hartford Courant, one of the parties in Docket #94-255. Avery and Keating communicated about issues of law in the case, such as the reasons for expediting the hearing and the basis for the motion to reopen. The conversation occurred prior to the effective date of the final decision in the FOIC case. The prohibitions of General Statutes § 4-181 were therefore applicable. General Statutes § 4-181(d).
Once a violation of General Statutes § 4-181 has been established, a presumption of prejudice must be deemed to arise.Henderson v. Department of Motor Vehicles, 202 Conn. 453, 458
(1987). The presumption of prejudice is rebuttable, but the burden of proving that there was no prejudice resulting from the prohibited ex parte communication rests with the agency. Id. 460. As a result, the FOIC bears the burden of proving to the court that neither Rowland nor Bona was prejudiced by the Avery/Keating conversation.
Where the content and circumstances of an ex parte conversation are fully disclosed, a reviewing court can make an informed judgment as to whether prejudice has resulted. Id. 459. This court has before it Keating's testimony at an earlier hearing in the Bona appeal last fall. A transcript of that hearing was admitted into evidence in the trial of these two appeals. Keating's testimony sets forth both the content and circumstances of his telephone conversation with Avery. It is clear from Keating's testimony that his role in the conversation with Avery was principally to ask questions, seeking Avery's comment on statements made by others. For example, Keating told Avery what counsel for Bona and Rowland said about the expedited pace of Docket #94-255 and then asked Avery to comment on that.
When Keating reviewed the statements made by counsel for Bona and Rowland with Avery, he was not disclosing to Avery any new information. Keating testified in court that he had attended the October 17 hearing before Avery. He also testified that counsel for Bona and Rowland had refused to speak to Keating on the phone. The court infers from these two facts that Keating heard the statements made by counsel for Bona and Rowland while attending the hearing over which Avery presided. The content of the statements, therefore, was not new to Avery.
Keating testified that his conversation with Avery was conducted in the usual way in which Keating as a reporter CT Page 9635 conducts interviews, seeking information from people by questioning them. Because no new information was transmitted to Avery and because Keating's questions did not prejudice Bona or Rowland, the FOIC sustained its burden of proving that no prejudice resulted to either Bona or Rowland as a result of Keating's conversation with Avery. The plaintiffs' claims with respect to Avery's conversation with Keating are unavailing.
 V.
The plaintiffs' final claim is that the FOIC erred in concluding that the Report did not constitute allegations of criminal activity within the meaning of General Statutes §§1-19(b)(3)(G) and 1-20c, and therefore was not exempt from disclosure. This question of law is for the court to resolve.Wilson v. Freedom of Information Commission, supra, 181 Conn. 342-3.
As the record discloses, Bona informed Baggott by letter dated October 13, 1994, that the full Report would not be disclosed because in Bona's view it was exempt from disclosure under General Statutes § 1-19(b)(3)(G) in that it contains uncorroborated allegations which are subject to destruction under General Statutes § 1-20c. In issuing the final decision ordering disclosure of the Report subject to certain redactions, the Commission made two findings with respect to the claimed exemption. First, it found that the plaintiffs "have not cited, and the Commission cannot ascertain, any criminal activity, as defined in the Connecticut General Statutes or the United States Code, to which the allegations contained in the records might apply." Secondly, the FOIC found that there was no evidence of a referral for criminal prosecution by the Middlebury police. Based on these two findings, the Commission concluded that the Report does not constitute allegations of criminal activity within the meaning of General Statutes §§ 1-19(b)(3)(G) and 1-20c.
The exemption from public disclosure for records of law enforcement agencies consisting of uncorroborated allegations of criminal activity has not been addressed previously by our Appellate Court or Supreme Court. The Supreme Court has ruled that construction of the Freedom of Information Act ("FOIA" or "Act") must be informed by our policy favoring the disclosure of public records. Superintendent of Police v. Freedom ofInformation Commission, 222 Conn. 621, 626 (1992). Exceptions to disclosure must be narrowly construed. Id. However, "the CT Page 9636 act itself recognizes competing interests and the need for some governmental records to remain confidential . . ." Gifford v.Freedom of Information Commission, 227 Conn. 641, 652 (1993). The Act "reflects a legislative intention to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality." Wilson v.Freedom of Information Commission, supra, 187 Conn. 328. "In those limited circumstances where the legislature has determined that some other public interest overrides the public's right to know, it has provided explicit statutory exceptions. See, e.g., General Statutes 1-19(b)." Lieberman v. Board of LaborRelations, 216 Conn. 253, 266 (1990).
Section 1-19(b)(3)(G) exempts from public disclosure
 records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (G) uncorroborated allegations subject to destruction pursuant to section 1-20c . . .
Because the basis for the exemption is the possibility of destruction of the record in question under General Statutes § 1-20c, the analysis of the exemption should begin with that section, which provides
 Except for records the retention of which is otherwise controlled by law or regulation, records of law enforcement agencies consisting of uncorroborated allegations that an individual has engaged in criminal activity shall be reviewed by the law enforcement agency one year after the creation of such records. If the existence of the alleged criminal activity cannot be corroborated within ninety days of the commencement of such review, the law enforcement agency shall destroy such records.
The legislature adopted this provision in 1988 as section two of Public Act No. 88-227. Section three of the same public act, which was codified as General Statutes § 1-20d, provided an exemption from disclosure for uncorroborated information which might damage a person's reputation: CT Page 9637
 Copies of records of law enforcement agencies disclosed pursuant to chapter 3 of the general statutes or otherwise may first be altered by removal of: (1) Any information which would contribute to the identification of an informant; (2) any uncorroborated information which, if publicly known, would significantly damage the reputation of a person not convicted of a crime related to such uncorroborated information . . . and (3) any information relevant to a present or future law enforcement action.
Public Act No. 88-227 established the affirmative duty on the part of law enforcement agencies to review their records of uncorroborated allegations one year after they were created and to destroy such records if the allegations could not be corroborated within ninety days thereafter. Concomitantly, the General Assembly provided that law enforcement agencies could redact three types of information from their records prior to public disclosure: information relating to informants, information relevant to a present or future law enforcement action and uncorroborated information which would be significantly damaging to the reputation of someone who had not been convicted of a crime.
In 1990 the General Assembly took action again with respect to law enforcement records containing uncorroborated allegations. Public Act No. 90-335 repealed General Statutes § 1-20d, adopted only two years earlier, which provided for partial redaction of law enforcement records for uncorroborated and damaging information. In the same public act, however, the legislature added to the exemptions for records of law enforcement agencies an additional exemption for "uncorroborated allegations subject to destruction pursuant to Section 1-20c." This exemption is now codified at General Statutes §1-19(b)(3)(G). A proponent of P.A. No. 90-335, then Senator Richard Blumenthal, explained the purpose of the bill,
 What this bill does or would do is essentially to provide for an exemption from disclosure under the FOI, the Freedom of Information Act for records for uncorroborated accusations against individuals that are subject to destruction under Section 1-20c of the Connecticut General Statutes. Those are the kinds of records which must be reviewed by a law enforcement agency and destroyed within 90 days if there is no CT Page 9638 evidence to corroborate the accusations or allegations of an individual.
 The purpose really is to provide some protection for individuals who may be the subject of these kinds of allegations and who deserve some protection against disclosure under the FOIA.
(Emphasis added). Sen. Proc., April 27, 1990, p. 1546.
The FOIC's conclusion that the Report is not exempt from disclosure rests on the two factual findings set forth above. The Commission first found that it could not discern any criminal activity in the Report. The court has examined the Report in camera pursuant to General Statutes § 1-21i(d) and based on that examination, the court finds that the Report contains uncorroborated allegations of criminal activity which are subject to destruction pursuant to General Statutes § 1-20c. The Commission's finding that it could not ascertain any criminal activity in the Report is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, which includes the Report, and is further affected by error of law. General Statutes § 4-183(j)(4) and (5).
The Report is comprised of three pages. The first is entitled "Incident Report Summary Sheet." The second is entitled "Incident Report narrative." The third page is a reporting form for submission to the state police. Information previously disclosed by Bona established that Ms. Rowland made a complaint to Middlebury police about an incident at her home on April 10, 1994, which was later termed by the police "Family Offenses, Non violent" and "verbal between husband and wife."
The Report reveals that two phone calls were placed to Middlebury police, who went to Ms. Rowland's home and interviewed her with respect to what had occurred. The allegations made to police as set forth in the Report constitute "uncorroborated allegations that an individual has engaged in criminal activity" within the meaning of General Statutes § 1-20c. Black's Law Dictionary, 6th Edition, defines "crime" as "a positive or negative act in violation of penal law." Ms. Rowland described for the police what occurred at her home prior to the arrival of the police. The Report sets forth her description of what happened. The events as she described them constitute a violation of the Connecticut Penal Code, General CT Page 9639 Statutes § 53a-1 et seq., in at least one respect. The criminal offense in question is cited on the third page of the Report by reference to a specific section of the Penal Code. The offense which is specified is a class C misdemeanor. The Report also reveals an unsuccessful effort by Middlebury police to substantiate the allegations. It is difficult to understand how the Commission could overlook this citation of a criminal offense.
Counsel for the Commission admitted at oral argument of these appeals that the Commission has limited experience with criminal statutes. She suggested that the FOIC did not ascertain a crime in the Report because the Report did not show an arrest or a referral for criminal prosecution. In fact, the Commission's second factual finding with respect to the exemption is that there was no evidence that Middlebury police referred the matter for criminal prosecution. This finding, although accurate factually, is legally insignificant. Neither General Statutes § 1-20c nor § 1-19(b)(3)(G) requires a referral for criminal prosecution in order for the Report to constitute an allegation of criminal activity.
The exemption at issue is for law enforcement records which consist of "allegations that an individual has engaged in criminal activity." General Statutes §§ 1-20c and 1-19(b)(3)(G). The Report contains such allegations in that it describes conduct which, if proven beyond a reasonable doubt, establishes the commission of a criminal offense, a class C misdemeanor.
The Report meets all of the other criteria for exemption under Section 1-19(b)(3)(G) also. The Report is a record of a law enforcement agency, namely the Middlebury police department. It is not otherwise available to the public. It was compiled in connection with the investigation of crime. The Courant argues that the Report was not compiled in connection with the investigation of a crime because of a statement made by Ms. Rowland at the end of her discussion with the police as to what action she wished them to take. The court notes that the complainant initially summoned the police to her property for their assistance because of what was then transpiring. They responded in order to investigate allegations of a criminal offense. The Report is a record of their investigation. Moreover, the wishes of an alleged victim of a possible family violence crime are not controlling with respect to the actions to be taken by the police. General Statutes § 46b-38b. CT Page 9640
Both defendants make a number of claims that the Report is not exempt despite the apparent applicability of Section 1-20c and Section 1-19(b)(3)(G). They contend first that when Section 1-20c was adopted in 1988, it was intended only for the files of the Statewide Organized Crime Investigative Task Force (SOCTIF) and that it now applies only where it is the police who make uncorroborated allegations of criminal activity. The defendants fail, however, to cite any basis for this contention.
Public Act No. 88-227 did bear the title "An Act Concerning the Disclosure of Information by the Statewide Organized Crime Investigative Task Force." However, the substantive provisions of P.A. 88-227 specifically established that SOCTIF was to be subject to the FOIA in the same manner as any other law enforcement agency. Section 1 read
 Section 1. Section 29-170 of the general statutes is repealed and the following is substituted in lieu thereof.
 [In order to keep the public informed as to the operations of organized crime and the problems encountered by the state in dealing with organized crime, the state-wide organized crime investigative task force may disseminate such information by such means and to such extent as it deems appropriate.] RECORDS OF THE STATE-WIDE ORGANIZED CRIME INVESTIGATIVE TASK FORCE SHALL BE SUBJECT TO DISCLOSURE UNDER CHAPTER 3 TO THE SAME EXTENT AS RECORDS OF OTHER LAW ENFORCEMENT AGENCIES.
There is nothing in P.A. 88-227 which suggests that Section 1-20c applied only to allegations of criminal activity made by the police rather than allegations made to the police. The defendants cite no basis for the claim that the exemption applies only to allegations of criminal activity made by the police. The court finds no support for such a contention in the legislative history or elsewhere.
The Courant also contends that the Report cannot be found exempt under General Statutes § 1-19(b)(3)(G) without a specific finding that disclosure of the Report "would not be in the public interest . . ." It is not disputed that Bona made no specific finding concerning the public interest when he determined that the Report was exempt from disclosure under CT Page 9641 Section 1-19(b)(3)(G). No such finding is required, however.
General Statutes § 1-19(b)(3) reads in part as follows:
 Nothing in Sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (3) records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime if the disclosure of said records would not be in the public interest because it would result in the disclosure of
(A) . . . (B) . . . (G) uncorroborated allegations subject to destruction pursuant to Section 1-20c;
(Emphasis added.) In § 1-19(b)(3)(G), the legislature already defined the public interest through subsections (A) through (G).
The Connecticut Supreme Court has previously rejected a claim for a public interest balancing test in the interpretation of a Section 1-19(b) exemption. In Chairman v. Freedom ofInformation Commission, 217 Conn. 193 (1991), the court held that the exemption in Section 1-19(b)(2) for "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy" did not require a public interest balancing test, contrary to the claims of the FOIC. Id., 200. The court reasoned,
 [W]e note that an exemption under § 1-19(b)(1) which excludes disclosure of "preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure" expressly requires a balancing test in determining when information may be disclosed. The fact that the legislature specifically declined to include a balancing requirement in § 1-19(b)(2) is strong evidence that a balancing test is inappropriate when applying § 1-19(b)(2). Expressio unius est exclusio alterius.
(Emphasis added.) Id. The same reasoning applies here. In Section 1-19(b)(1), where the legislature wanted the agency to determine the public interest, the legislature explicitly so required with the wording "provided the public agency has CT Page 9642 determined that the public interest . . ."
Section 1-19(b)(3)(G) does contain a reference to the public interest, but immediately thereafter, the legislature added the words "because it would result in disclosure of . . . (G) uncorroborated allegations . . ." (Emphasis added.) The use of the word "because" demonstrates that the legislature has already made a determination of the public interest within the statute itself. "Because" is defined in Webster's New World Dictionary, Second College Edition, as meaning "for the reason that." It is clear, therefore, that the legislature, in enacting the statute, found that disclosure of the information described in subsections (A) through (G) would not be in the public interest. If the legislature wanted the agency to determine the public interest through a balancing test, it could have provided so explicitly, as it did in § 1-19(b)(1). This is another instance where the legislature has already balanced the public's right to know with the private need for confidentiality.Chairman v. Freedom of Information Commission, supra, 217 Conn. 200.
It is significant that the FOIC does not join the Courant in claiming that Bona failed to make a necessary finding of the public interest. Although the FOIC once interpreted the exemption in General Statutes § 1-19(b)(3)(G) to require such a finding, the Commission no longer requires that the agency in question must make a finding of the public interest. In 1993, the FOIC interpreted the "uncorroborated allegations" exemptions, then codified as General Statutes § 1-19(b)(3)(F), as requiring a finding or showing of public interest. LaGanza v.Chief of Police, Freedom of Information Commission Docket #FIC 93-78, October 27, 1993. By 1994, however, the Commission no longer made such a finding or required such a showing. Capsisv. Westport Police Department, Freedom of Information Commission, Docket #94-73, August 24, 1994; Springer v. Chief ofPolice, Freedom of Information Commission, Docket #FIC 94-160, April 5, 1995. The Courant's claim that Bona must make an express finding with respect to the public interest is unavailing.
Cassis and Springer are also instructive because they raise further question about the validity of the FOIC's decision in this case. In both Capsis and Springer, the Commission readily found that the requested police incident reports consisted of "uncorroborated allegations that an individual has engaged in criminal activity" and that the entire reports were exempt from disclosure. The Commission did not in these cases make any CT Page 9643 finding that the allegations were made by police nor did the Commission order a partial disclosure of the reports or question police efforts to corroborate the allegations. A review of theCapsis and Springer decisions by the FOIC does not reveal any apparent distinction between the facts in those cases, where the FOIC found that the reports were exempt, and the facts in the two appeals now before the court, where the FOIC has ordered disclosure.
Both defendants also contend that the Report is not exempt from public disclosure because of insufficient attempts by the Middlebury police department to corroborate the allegations. The second sentence of Section 1-20c provides, "[i]f the existence of the alleged criminal activity cannot be corroborated within ninety days . . ." of the one year anniversary date, the record is to be destroyed.
The Report was written and signed on April 11, 1994, the day after Middlebury police were summoned to Ms. Rowland's home. The Report shows that Middlebury police as of April 11 had made efforts to corroborate the allegations of criminal activity, but had not yet been successful. Based on these facts, the Courant and the FOIC contend that there has been an insufficient showing of attempted corroboration.
The Courant urges that Section 1-20c be interpreted to require a good faith effort to corroborate and an inability to corroborate before the Report can be found exempt. The FOIC argues for a full and meaningful attempt to corroborate. Neither defendant cites any authority for these suggested interpretations of the statute. The statute itself is silent with respect to the extent of the effort to corroborate. There is nothing in the statute which indicates that the legislature intended the court to become involved in reviewing the effort by the police to corroborate the allegations.
Moreover, even if the statute required a review of the corroboration effort, it would have been premature for the FOIC to undertake an inquiry into the effort by the police to corroborate the allegations. The final decision of the Commission was issued on October 31, 1994, approximately seven months after the Report was made. Corroboration is not required under Section 1-20c, however, until fifteen months after the record was created. As a result, it would have been premature for the Commission to inquire into the corroboration effort of CT Page 9644 the Middlebury police department.
The Courant also contends that the Report should be available to the public during the fifteen months between creation of the record and the end of the ninety-day corroboration period. Once again, the Courant cites no basis in the statute, case law or legislative history to support this illogical interpretation. If the Report were open to the public during the fifteen month period, there would be no purpose to either the corroboration effort, which must begin on the one-year anniversary of the creation of the record, or to the destruction of the record if uncorroborated, for the content would have been already made public.
Sections 1-19(b)(3)(G) and 1-20c, interpreted reasonably together, provide an exemption from disclosure for uncorroborated allegations during the fifteen months between creation of the record and completion of the effort to review and corroborate. If, during or at the end of the fifteen-month period, the allegations are corroborated, there would likely be an arrest, at which point disclosure of the arrest record would be governed by General Statutes § 1-20b. If, by the end of the fifteen-month period, the allegations "cannot be corroborated" in the wording of Section 1-20c, the record then must be destroyed. Section1-19(b)(3)(G) provides an exemption for records "subject to" destruction. The term "subject to" indicates a future possibility of destruction, thus exempting the records during the fifteen month period. There is no merit to the contentions of the defendants.
The defendants' remaining contentions are unavailing as well. They contend that the Report is not one report, but rather is three different reports, each consisting of one page. This claim is not substantiated by the evidence in the record. In accordance with FOIC regulations, Bona certified under oath to the FOIC that the three pages are "the original incidentreport for case no. 94-02511." (Emphasis added.) Regs., Conn. State Agencies § 1-21j-35(f)(5). It is clear that all three pages are treated as one report by Middlebury police. Another contention is that the statute of limitations may now have expired with respect to any criminal offense alleged in the Report. Neither General Statutes §§ 1-20c nor 1-19(b)(3)(G), however, make any provision for vitiating the exemption once the statute of limitations has expired. The legislature's concern since 1988 has been the protection of a person's reputation, not CT Page 9645 the determination of whether there is a viable criminal prosecution.
The court finds that substantial rights of the plaintiffs Bona and Rowland have been prejudiced by the FOIC's final decision ordering disclosure of the Report, which the court finds is exempt from mandatory disclosure. The final decision was affected by error of law in the Commission's application and interpretation of the exemption under General Statutes §1-19(b)(3)(G), clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and arbitrary and characterized by abuse of discretion. The appeals are sustained.